IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**JEFFREY DEAN CHAMBERS,** )<br>)<br>**Defendant.** ) | Case No. 08-cr-30057 |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Jeffrey Dean Chambers' Amended Motion for Modification of Sentence (d/e 95) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  For the reasons set forth below, the motion is DENIED.

**I. BACKGROUND**

On April 17, 2009, a jury found Defendant guilty of one count of enticement of minors in violation of 18 U.S.C. §§ 2422(b) and two counts of transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1).  Minute Entry, April 17, 2009; Judgment, d/e 57.  On October 26, 2009, United States District Judge Jeanne

Scott sentenced Defendant to 240 months' imprisonment on each count to run concurrently with each other.  Minute Entry, Oct. 26, 2009; Judgment, d/e 188.  Defendant is currently serving his sentence at FCI Butner Medium II in Butner, North Carolina, and has a projected release date of July 17, 2025.  See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed October 23, 2020).

On October 6, 2020, Defendant filed a pro se motion for compassionate release (d/e 91) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On October 19, 2020, after appointment of the Federal Public Defender, Defendant filed an Amended Motion for Modification of Sentence (d/e 95).  Defendant requests compassionate release due to his health issues and the COVID-19 pandemic.  Defendant is 60 years old and has suffered two heart attacks that have required the placement of a stent.  Am. Mot. Modification of Sentence 1, 4.  Defendant also has a body mass index that qualifies as obese.  Id. at 2-4.  Defendant's motion also claims that Defendant suffers from hypertension.  Id. at 4.

On October 20, 2020, the Government filed a Response Opposing the Defendant's Motion for Compassionate Release (d/e

98).  The Government argues that the Court should deny Defendant's compassionate release motion given Defendant's criminal history and because Defendant does not meet the requirements for compassionate release.  The Government also notes that the Bureau of Prisons (BOP) has implemented procedures designed to curb the spread of the virus in its facilities.

On October 21, 2020, the Court held a videoconference hearing on Defendant's amended motion.  Defendant appeared by video from FCI Butner Medium II.  The hearing was continued to October 23, 2020, in order to ensure that the victims in this case had been notified by the Government of the hearing and their opportunity to be heard.  At the continued hearing on Defendant's motion, the Government advised the Court that any required notifications had been made per United States Department of Justice protocols and that there were no victims who wished to be heard on the motion.

As of October 23, 2020, BOP reports that FCI Butner Medium II has no confirmed inmate or staff member cases of COVID-19. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed October 23,

2020).

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

The court, upon motion of the Director of the Bureau of

Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Social distancing can be difficult for

individuals living or working in a prison. Further, Defendant has been diagnosed with an underlying medical condition that may increase the serious risks that COVID-19 presents for Defendant.

Among Defendant's health conditions are a history of two heart attacks, a number of elevated blood pressure readings, and a body mass index that qualifies as obese. Of these three conditions, the CDC's current guidance only recognizes obesity as a condition that increases the risks of COVID-19.[1] According to the CDC's current guidance, hypertension might increase the risks.[2] Defendant, however, has not been formally diagnosed with hypertension, although some of the blood pressure readings in the BOP medical records are higher than normal. See d/e 98-2. Additionally, while the CDC recognizes that certain serious heart conditions—including heart failure and coronary artery disease

---

1. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (last accessed October 23, 2020).
2. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#heart-conditions (last accessed October 23, 2020).

among others—increase the risks of COVID-19, the occurrence of a heart attack is not among those conditions.[3]

While the Court recognizes that Defendant's age may increase the risks of COVID-19, the current evidence available indicates that the risk increases most dramatically for individuals over the age of 65.[4] The available statistics from the CDC show that eight out of ten COVID-19-related deaths have been in persons over the age of 65.

Furthermore, in regards to his heart condition, Defendant appears to have what the BOP medical records refer to as a "long history of noncompliance and refusing medications." BOP Medical Records, d/e 98-2. A Medical Treatment Refusal form from February of this year indicates that medications to control blood pressure and reduce the risk of another heart attack were refused by Defendant. Similarly, the same form notes that annual labs and imaging studies that were recommended to monitor Defendant's

---

3. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#heart-conditions (last accessed October 23, 2020).
4. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed October 23, 2020).

cardiac health were also refused.

At the time Defendant's amended motion was filed, FCI Butner Medium II reported three active confirmed cases of COVID-19. Am. Mot. Modification of Sentence 5. As of today, there are zero cases in that particular facility. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed October 23, 2020). According to the Government, BOP has implemented rigorous procedures designed to mitigate the spread of the virus in its facilities. For now at least, BOP's efforts to control the spread of the virus at the facility appear to be working, although the Court does recognize that testing has been somewhat limited.

Further, Defendant has nearly five years remaining on his sentence, assuming he receives full good time credit. In committing the offense for which he is now incarcerated, Defendant engaged in multiple conversations of a sexual nature on the internet and over the telephone with persons who Defendant knew or believed to be under the age of eighteen. In these conversations, Defendant discussed sexual acts he wish to perform with the minor children and on multiple occasions sent child pornography. While Defendant notes that BOP has designated him as a low recidivism

risk, upon consideration of the Section 3553(a) factors—particularly the need to protect the community from further crimes of the defendant—the Court is not reassured that Defendant will not reoffend in the future based on that designation alone given the fact that Defendant has not yet received sex offender treatment during his incarceration because Defendant has declined to participate in that treatment. Additionally, Defendant has been disciplined on five occasions while in BOP custody for infractions ranging from being insolent to a staff member to assault without serious injury.

Finally, Defendant has not proposed a release plan that the Court finds adequate. Defendant initially proposed two alternative release plans. At the hearing on Defendant's motion, one of those plans was withdrawn by Defendant as no longer a viable option. The remaining release plan is for Defendant to live in a home that is owned by a friend of Defendant's who he met while in BOP custody. In Probation's Memorandum, the assigned Probation Officer notes that Defendant's conditions of supervised release forbid associating with convicted felons without permission.

The Court, taking all the relevant facts into account, finds that Defendant has not established that there exist extraordinary and

compelling reasons that warrant a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above, Defendant Jeffrey Dean Chambers' Amended Motion for Modification of Sentence (d/e 95) and Defendant's pro se Motion for Compassionate Release (d/e 91) are DENIED. This ruling does not preclude Defendant from filing another motion for compassionate release in the future if circumstances change.

ENTER: October 23, 2020

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE